UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMMY KINNER,<br><br>                Plaintiff,<br><br>    v.<br><br>ADA COUNTY PROSECUTOR'S OFFICE; ADA COUNTY SHERIFF'S OFFICE; ADA COUNTY JAIL; ADA COUNTY SHERIFF; and ADA COUNTY JAIL & UNIDENTIFIED ADA COUNTY SHERIFF'S OFFICE EMPLOYEES,<br><br>                Defendants.[1] | Case No. 1:21-cv-00128-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Timmy Kinner's Complaint (Dkt. 2) as a result of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint (Dkt. 7), which is almost identical to the initial Complaint. Plaintiff also recently filed a document (Dkt. 11) that attempts to add Defendants to the case and that includes additional allegations. However, because Plaintiff did not seek leave to file a supplemental pleading as required by Federal Rule of Civil Procedure 15(d), the Court does not consider this document to be a supplemental complaint.

---

[1] It appears from the body of the Amended Complaint that Plaintiff intended to name an additional Defendant: "FNU Verdi." *See Am. Compl.*, Dkt. 7, at 2. However, Verdi is not listed in the caption of the complaint. Plaintiff is advised that he must clearly identify all intended Defendants in the caption. Any individual or entity not so identified is not considered a party to this action.

The Court now reviews the Amended Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order, directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

1.  **Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2.  **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has

not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). And, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

3.  **Factual Allegations**

Plaintiff is an inmate currently confined in the Ada County Jail. Plaintiff asserts that FNU Verdi, apparently an Ada County Sheriff's Deputy, harassed Plaintiff on December 1, 2020. *Am. Compl.* at 2. Verdi "searched [Plaintiff's] cell & took [Plaintiff's] pictures & disposed of them." *Id.* In another search that same day, Verdi confiscated five of Plaintiff's books. Plaintiff also asserts that he was strip-searched. *Id.* Non-defendant Serratius was "involved as [the] supervising officer." In the end, Plaintiff was subjected to a total of two body searches and three cell searches.

4.  **Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Amended Complaint. The Court will, however, grant Plaintiff 60 days to file a second amended complaint. Any such amendment should take into consideration the following.

   A.  ***Section 1983 Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. *Am. Compl.* at 1. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466,

2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates

ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

To bring a § 1983 claim against a municipality—which is a local governmental entity, such as Ada County—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against a municipality are the following:

(1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

It is unclear whether Plaintiff was a pretrial detainee or a convicted inmate at the time his claims arose. "The principle that confinement brings about the necessary withdrawal or limitation of many privileges and rights applies equally to pretrial detainees and prisoners." *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 974 (9th Cir. 2010) (internal quotation marks and alteration omitted). However, different standards apply to

conditions-of-confinement claims depending on whether the plaintiff is a pretrial detainee or a convicted inmate. Therefore, Plaintiff must clarify his status at the time of the events described in any second amended complaint.

Conditions-of-confinement claims asserted by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. That clause guarantees detainees the right to be free from conditions of confinement that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "There is no constitutional infringement, however, if restrictions are 'but an incident of some other legitimate government purpose.'" *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (quoting *Bell*, 441 U.S. at 535).

"In distinguishing between a permissible restriction and impermissible punishment, [a court must] first examine whether the restriction is based upon an express intent to inflict punishment"; if it is not, then the court must "consider whether punitive intent can be inferred from the nature of the restriction." *Id.* This determination depends on "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether the restriction appears excessive in relation to the alternative purpose assigned to it." *Id*. at 1045–46 (internal quotation marks and alterations omitted). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.

Conditions-of-confinement claims asserted by convicted inmates are analyzed not under the Due Process Clause, but under the Eighth Amendment. That amendment does not prohibit punishment in all forms—only punishment that is cruel and unusual.

Jail and prison officials have an Eighth Amendment duty to ensure that inmates are provided adequate shelter, food, clothing, sanitation, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Keenan v. Hall*, 83 F.3d 1083, 1098 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). For example, the "'more basic the need the shorter the time it can be withheld.'" *Id*. (quoting *Hoptowit*, 682 F.2d at 1259). Unless the need is serious, temporary substandard conditions of confinement do not rise to the level of a constitutional violation. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995) ("The plaintiffs here have not shown … that the sanitary limitations imposed upon them were more than temporary.").

Although conditions of confinement may be harsh and restrictive without violating the Eighth Amendment, they cross the line of acceptability when they (1) involve "the wanton and unnecessary infliction of pain," (2) are "grossly disproportionate to the severity of the crime warranting imprisonment," (3) result "in unquestioned and serious deprivation of basic human needs, or (4) deny an inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These severe types of deprivations must be contrasted with merely uncomfortable conditions of confinement, which are not prohibited by the Eighth Amendment. *Id*. at 349 ("[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes, cannot be free of discomfort.").

A convicted inmate challenging the conditions of his confinement must make two showings. First, the plaintiff must make an objective showing that the deprivation was serious enough "to form the basis for an Eighth Amendment violation." *Johnson*, 217 F.3d at 731. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, "sufficiently grave." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind." *Johnson*, 217 F.3d at 731 (internal quotation marks omitted). This state of mind is referred to "deliberate indifference." *Id*. at 733. To establish an official's deliberate indifference, an inmate must show that (1) the official was aware of a substantial risk to the prisoner's health or safety, and (2) the officer deliberately disregarded that risk. *Farmer*, 511 U.S. at 837. To rebut the subjective inquiry, prison officials may present evidence that they reasonably responded to the risk. *Id*. at 844–45. Mere negligence is not sufficient to establish deliberate indifference. Rather, the official's conduct must have been wanton. *Id*. at 835.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

    i.    <u>Search and Seizure Claims</u>

Plaintiff challenges, as unconstitutional, the cell and body searches to which he was

subjected at the Ada County Jail.

The Fourth Amendment prohibits unreasonable searches and seizures. "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979). This inquiry "normally embraces two discrete questions. The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy—whether ... the individual has shown that he seeks to preserve something as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Id*. (internal quotation marks, citations, and alterations omitted).

Neither pretrial detainees nor prisoners have a reasonable expectation of privacy in their jail or prison cells. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (per curiam) (unpublished) (5th Cir. 2015). Therefore, Plaintiff's Fourth Amendment claims based on the searches of his jail cell are implausible.

However, the Fourth Amendment does apply to strip-search claims of pretrial detainees, although "officials have a significant interest in conducting a thorough search" of detainees in their custody. *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 330 (2012). A court must consider several factors in determining whether a strip-search was unreasonable: "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted."

*Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (internal quotation marks omitted).

Whether a search of a pretrial detainee is unreasonable in violation of the Fourth Amendment must be evaluated "in the light of the central objective" of jail administration: "safeguarding institutional security." *Bell*, 441 U.S. at 547. Even if a court "disagree[s] with the judgment of corrections officials about the extent of the security interests affected and the means required to further those interests," it "may not engage in an impermissible substitution of [its] view on the proper administration of a corrections facility for that of the experienced administrators of that facility." *Bull*, 595 F.3d at 976 (internal quotation marks and alterations omitted).

In *Bell v. Wolfish*, the United States Supreme Court upheld as constitutional a policy of mandatory, routine strip-searches—which included visual cavity searches—performed on detainees "after every contact visit with a person from outside the institution," even though the searches were not supported by individualized suspicion. 441 U.S. at 558. The Court emphasized that the constitutionality of strip-searches depends on whether such searches "are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Id*. at 561.

The Supreme Court has also upheld invasive strip-searches of an arrestee or transferring inmate before placing the inmate in the general population, given that the "admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself." *Florence*, 566 U.S. at 330. The jail officials in *Florence* required the detainee to shower with a delousing agent and checked

the detainee for scars, marks, gang tattoos, and contraband as he stripped. The detainee also had to "open his mouth, lift his tongue, hold out his arms, turn around, and lift his genitals." *Id*. at 323. An officer at another facility looked at the detainee's "ears, nose, mouth, hair, scalp, fingers, hands, armpits, and other body openings," and the detainee was required to lift his genitals, turn around, and cough while squatting. *Id*. at 324. These searches, though undoubtedly invasive, were justified by legitimate security concerns and, therefore, constitutional.

If the inmate subject to a strip-search is a convicted prisoner rather than an arrestee or pretrial detainee, the claim must be evaluated under the Eighth Amendment. Even searches that are "unpleasant, humiliating, and embarrassing to prisoners" do not, without more, violate the Eighth Amendment. *Bromell v. Idaho Dep't of Corr*., Case No. 2:05-cv-00419-LMB, 2006 WL 3197157, at *2 (D. Idaho Oct. 31, 2006) (quoting *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003).

In general, when an inmate is subjected to a bodily search, the Eighth Amendment is violated only if the search "is performed in a harassing manner intended to humiliate and inflict psychological pain." *Id.* at *4. Psychological pain arising from body searches must be severe to give rise to an Eighth Amendment claim. *See Somers v. Thurman,* 109 F.3d 614, 616 (9th Cir. 1997) (holding that the Eighth Amendment did not prohibit female guards from performing visual body cavity searches on male inmates or watching male inmates shower, despite one inmate's allegation that the guards pointed, joked and "gawked" at him); *Grummett v. Rushen,* 779 F.2d 491, 493 n. 1 (9th Cir. 1985) (holding that a prison's policy allowing female guards to observe male inmates disrobing,

showering, using the toilet and being strip-searched, and allowing them to conduct pat-down searches in the groin area, did not amount to "the type of shocking and barbarous treatment" prohibited by the Eighth Amendment).

The Eighth Amendment also prohibits "calculated harassment unrelated to [institutional] needs." *Hudson*, 468 U.S. at 530. Thus, if searches of an inmate are undertaken maliciously with the intent to harass the inmate, the searching official may be liable under § 1983.

The Amended Complaint does not specifically describe the nature of the searches to which Plaintiff was subjected. Simply alleging that Verdi conducted three cell searches and two bodily searches is far too vague to support a plausible inference either that the searches were unreasonable, that Verdi intentionally caused Plaintiff severe psychological pain, or that Verdi intended to harass Plaintiff. Nor does the Amended Complaint plausibly suggest that the searches of which Plaintiff complains were undertaken pursuant to a policy or custom of Ada County.

Plaintiff may attempt to remedy these deficiencies in a second amended complaint.

  ii.  Due Process Property Interest Claims

Plaintiff also claims that Defendants violated the Constitution when Verdi confiscated Plaintiff's property during or after the cell searches.

The Due Process Clause prohibits the government from depriving an individual of life, liberty, or property without due process of law. However, the right to due process is "not implicated by a negligent act of an official causing unintended loss" of property. *Daniels*, 474 U.S. at 328 (emphasis omitted)). Moreover, even the *intentional* deprivation

of personal property by prison officials will not support a due process claim under § 1983 if the prisoner has an adequate remedy under state law. *Hudson*, 468 U.S. at 533.

Idaho has adopted the Idaho Tort Claims Act ("ITCA"), Idaho Code § 6-901, *et seq.*, to provide a remedy for citizens injured by the tortious acts of governmental entities, officials, and employees. As a general rule, "every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties." Idaho Code § 6-903(1).

One exception to this rule is that "any law enforcement officer," acting "without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct," shall not be liable for a claim that "[a]rises out of the detention of any goods or merchandise." Idaho Code § 6-904B(1). It is unclear whether this exception to liability applies when a jail or prison official deprives an inmate of personal property. Importantly, however, even assuming that this exception applies in the jail or prison context, it would not immunize officials from liability for acts that are grossly negligent, reckless, or willful and wanton. Because an inmate who is deprived of property as a result of jail officials' grossly negligent, reckless, or willful and wanton conduct has an adequate remedy under the ITCA, Plaintiff's due process claim based on Verdi's taking of personal property is implausible.

   iii.  <u>Equal Protection Claims</u>

Plaintiff also cites the Equal Protection Clause of the Fourteenth Amendment, but it is unclear how that clause applies to the claims in this case. Plaintiff may be asserting

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

that other inmates were not subjected to similar searches.

The Equal Protection Clause guarantees equal protection of the law. The purpose of the clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Further, even where similarly situated persons are treated differently by the government, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id*. at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are

subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). However, because inmates are not a protected class under the Equal Protection Clause, their equal protection claims are generally subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998).

In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if the plaintiff shows (1) the plaintiff is similarly situated with persons who are treated differently by a governmental official, and (2) the official has no rational basis for the disparate treatment. Moreover, an additional layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78 (1987). *Turner* holds that a prison regulation or prison official's action is constitutional so long as it is reasonably related to a legitimate penological interest. *Id*. at 89; *see Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

Plaintiff should keep these standards in mind if he includes an equal protection claim in a second amended complaint.

### B. State Law Claims

In addition to § 1983 claims, the Amended Complaint purports to assert state law claims, though Plaintiff does not identify any such claims. *See Am. Compl*. at 1. Plaintiff should do so if he includes state law claims in a second amended complaint.

Because the Amended Complaint fails to state a federal claim upon which relief may be granted, at this time the Court declines to exercise supplemental jurisdiction over any potential state law claims. *See* 28 U.S.C. § 1367(c). If Plaintiff is allowed to proceed on a federal claim in a second amended complaint, and if such a complaint asserts a plausible state law claim, the Court will reconsider the issue of supplemental jurisdiction.

### 5. Standards for Second Amended Complaint

If Plaintiff chooses to file a second amended complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the

following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or due process claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. Plaintiff also must include facts supporting the *Monell* requirements if Plaintiff continues to name Ada County entities as Defendants.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended

complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff chooses to amend, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

**ORDER**

**IT IS ORDERED:**

1. The Amended Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amendment) a Motion to Review the Second Amended Complaint. If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Any second amended complaint will be limited to 20 pages. *See* General Order 342, *In Re: Procedural Rules for Prisoner Civil Case Filings and for Prisoner E-Filing Program*, § A(1)(a). Alternatively,

Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[2]

2. Plaintiff's request for appointment of counsel (contained in the Amended Complaint) is DENIED without prejudice. Plaintiff may renew the request for counsel in a second amended complaint.

DATED: June 30, 2021

David C. Nye
Chief U.S. District Court Judge

---

[2] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).